# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | 1:07-cv-00718 GSA |
| Plaintiff, | ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document 16) |
| v. | |
| WILLIAMSBURG NATIONAL INSURANCE COMPANY, | ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION (Document 18) |
| Defendant. | |

## INTRODUCTION

In this insurance coverage action, plaintiff United States Fire Insurance Company ("US Fire") and defendant Williamsburg National Insurance Company ("Williamsburg") seek this Court's determination of whether they are co-primary insurers or whether Williamsburg is an excess insurer for an underlying fatality involving a truck insured by US Fire and a trailer insured by Williamsburg. This Court considered Williamsburg's motion for summary judgment and US Fire's motion for summary adjudication on the record and without oral argument or a hearing, pursuant to this Court's Local Rule 78-230(h).[1]

---

[1] This court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this court did not consider the argument, document, paper or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for summary judgment.

1

# BACKGROUND

## *Sub-Haul Agreement and Insurance Policies*

On August 18, 2003, John R. Lawson Rock and Oil, Inc. ("Lawson") and E&B Bulk Transportation, Inc. ("E&B") entered into a subhaul agreement whereby E&B agreed to transport freight for Lawson. Pursuant to the subhaul agreement, E&B agreed to provide insurance naming Lawson as an additional named insured. The agreement also provided that subhaul-pullers would be "charged a maximum of 20% trailer rent." (Subhaul Agreement, at ¶ 8; Exhibit D to Declaration of John R. Lawson).

Plaintiff US Fire insured E&B (E&B Trucking, Inc.) under a Commercial Auto Policy. (Commercial Auto Insurance Policy No. 1336702905; Exhibit A to Declaration of Joan Andersen). Defendant Williamsburg insured Lawson under a Commercial Lines Policy, which covered two 1992 Freuhauf trailers owned by Lawson. (Commercial Lines Policy No. CA0271428; Exhibit A to Declaration of A. Virginia Dougherty; Vehicle Schedule Supplement; Exhibit B to Declaration of A. Virginia Dougherty). By endorsement, the Williamsburg policy contained a provision naming E&B as an additional insured with respect to liability arising out of operations performed *for* E&B by or on behalf of Lawson:

> The "Persons Insured" provision is amended to include as an ADDITIONAL INSURED the person or organization named below, but solely with respect to liability arising out of operations performed for such ADDITIONAL INSURED by or on behalf of the NAMED INSURED.
>
> Name of Person or Organization (Additional Insured)
>     E&B Trucking, Inc.
>     12451 12th Avenue
>     Hanford, CA 93230
>     ...
>
> Nothing in this endorsement shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated....

(Commercial Lines Policy No. CA0271428, at p. A-293; Exhibit A to Declaration of A. Virginia Dougherty).

The Williamsburg policy also contained the following "Who Is An Insured" provision:

**1. WHO IS AN INSURED**

The following are 'insureds':

     **a.** You for any covered 'auto.'

     **b.** Anyone else while using with your permission a covered 'auto' you own, hire or borrow...."

(Commercial Lines Policy No. CA0271428, at p. A-27; Exhibit A to Declaration of A. Virginia Dougherty).

### *Underlying Fatality and US Fire's Declaratory Relief Claim*

In July 2005, E&B had possession of five sets of Lawson's bottom dump trailers, including the two 1992 Fruehauf trailers insured by Williamsburg. On July 11, 2005, Joe Lourenco ("Lourenco"), in the course and scope of his employment with E&B, was operating a 1992 Freightliner tractor owned by E&B and pulling two 1992 Fruehauf trailers owned by Lawson, when he collided into a 1988 Pontiac Grand Prix, killing its driver, Elva Ramos ("Ramos"). Lourenco was not on a Lawson job at the time of the accident.

Ramos' heirs pursued an underlying survivor and wrongful death action against E&B, Lourenco and Lawson in Fresno County Superior Court identified as *Barron v. E/B Trucking*, Fresno Superior Court Case No. 05 CE CG 02 660 MBS ("*Barron* action"). (Exhibit G to Motion for Summary Judgment). According to the complaint in the instant action, Ramos' heirs dismissed Lawson from the *Barron* action. On November 30, 2006, a jury found E&B and Lourenco liable and awarded damages in the sum of $1,005,925.00. US Fire paid its policy limit of $1 million toward satisfying the judgment. Lexington, an excess insurer for E&B, paid the remaining $5,925.00 of the judgment. *See generally* Complaint (Doc. 2-2). US Fire also expended $119,324.21 in its defense of E&B and Lourenco.

In the present action for declaratory relief and equitable contribution between insurers, US Fire seeks contribution from Williamsburg for half of the $1 million paid to satisfy the judgment in the *Barron* action. US Fire also seeks costs and fees incurred to defend its insured in the *Barron* action.

### *Williamsburg's Motion for Summary Judgment*

Williamsburg contends that E&B and Lourenco were not permissive-user insureds under its policy at the time of the accident and, therefore, Williamsburg did not have a duty to defend or

indemnify E&B and Lourenco in the underlying lawsuit. Williamsburg alternately contends that, even if E&B and Lourenco did qualify as insureds under Williamsburg's policy, the coverage is excess to US Fire's coverage under California Insurance Code section 11580.9.

### *US Fire's Motion for Summary Adjudication*

US Fire seeks summary adjudication on its second cause of action for equitable contribution for defense and indemnity costs. US Fire contends that E&B and Lourenco were permissive users of the Lawson trailers. Accordingly, US Fire asserts that Williamsburg had an equal duty to defend and indemnify E&B and Lourenco in the *Barron* suit. US Fire requests an equitable allocation of defense and indemnity costs and seeks an award of $559,662.11 plus prejudgment interest toward the defense costs of E&B and Lourenco and $500,000 plus prejudgment interest toward indemnity of E&B and Lourenco.

### **STANDARD**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence and inferences therefrom must be viewed in the light most favorable to the non-moving party. *Diaz v. American Telephone & Telegraph*, 752 F.2d 1356, 1362 (9th Cir. 1985). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

(9th Cir. 1987). There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986) (citation omitted).

In judging evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to the trier of fact or whether it is so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

A.   First Cause of Action for Declaratory Relief

Williamsburg asserts that US Fire is not entitled to the judicial declaration it seeks with the first cause of action because E&B and Lourenco were not insureds under the Williamsburg policy at the time of the accident. Specifically, Williamsburg contends that it was not obligated to provide coverage because E&B and Lourenco did not have permission to use Lawson's trailers for non-Lawson business. US Fire counters that both E&B and Lourenco qualified as permissive-user insureds under the Williamsburg policy.

California Insurance Code section 11580.1 sets forth certain required and optional provisions of vehicle liability policies in California. One of the general statutory requirements is that an automobile liability policy must provide coverage for permissive users of the insured vehicles "to the same extent that insurance is afforded to the named insured." Cal. Ins. Code § 11580.1(b)(4). A "permissive user" is any person who uses an insured vehicle with the express or implied permission of the named insured, provided the use is within the scope of the permission. *Id.* As required by law, the Williamsburg insurance policy at issue covered permissive users of vehicles owned by Lawson.

The parties dispute whether E&B and Lourenco were permissive users of Lawson's trailers at the time of the accident. Williamsburg argues that E&B and Lourenco did not have

1  Lawson's express permission to use the trailers on the date of the accident or implied permission
2  to use Lawson's trailers for other business ventures.  US Fire does not appear to contest
3  Williamsburg's argument that E&B did not have express permission to use Lawson's trailers on
4  the date of the accident.  Instead, US Fire contends that E&B and Lourenco were permissive
5  users due to E&B's possession of the trailers for an extended period of time and Lawson's failure
6  to provide instruction regarding the scope of permitted use.  In essence, US Fire is arguing
7  implied permission.

*Implied permission*

Implied permission may be established from the direct evidence, all pertinent surrounding circumstances and proper inferences to be drawn therefrom. *Northwestern Sec. Ins. Co. v. Monarch Ins. Co. of Ohio*, 256 Cal.App.2d 63, 65 (1967).  Implied permission generally is a question of fact.  *Id.*

Here, Williamsburg argues that the evidence, surrounding circumstances and proper inferences establish that E&B did not have Lawson's implied permission to use the trailers on the date of the accident.  To support this argument, Williamsburg contends that E&B had possession of the trailers pursuant to a Sub-Haul agreement, E&B kept the trailers on its premises to facilitate its work for Lawson and it "defies reason" that Lawson would permit E&B to freely use the trailers for non-Lawson business when Lawson did not derive any profit from the use.

Williamsburg cites to the deposition testimony of E&B's Vice-President, Bill Walker, to demonstrate that Lawson did not give E&B permission to use the trailers.  Mr. Walker testified:

Q. ...How did you work out with them what you would be paying them, or were you even paying them when you used their trailers?

A. The only time, what John [Lawson] would do is when we subhauled through him, he would take a percentage for use of the trailers.

...

Q. What was your deal when you were hauling, other than subhauling for him and using his trailers?

A. It was never brought up.

6

1  Deposition of Bill Walker ("Walker Depo."), 35:8-19.  Williamsburg contends that the failure to
2  bring it up does not amount to implied permission, citing further testimony of Mr. Walker
3  wherein he reported that the issue of permission to use the trailers for E&B's purposes "never
4  came up."  Walker Depo., 36:2-5, 21-25; 39:12-17.  Williamsburg also cites the deposition of
5  John Lawson, who testified that neither he nor anyone else at his trucking company gave E&B
6  permission to use Lawson's trailers for business other than for Lawson under Lawson's subhaul
7  agreement with E&B.  Deposition of John Lawson ("Lawson Depo."), 33:13-22.  Mr. Lawson
8  also indicated that it is customary for a subhauler to use the prime carrier's equipment only in
9  connection with the subhaul for the prime carrier.  Lawson Depo., 38:14-20.  Williamsburg
10 argues that the only reasonable inference to be drawn in this instance is that E&B was authorized
11 to use the trailers only as a subhauler for Lawson and any other use exceeded the scope of
12 permission.  Williamsburg relies on the decision in *Hartford Acc. & Indemn. Co. v. Abdullah*, 94
13 Cal.App.3d 81 (1979) to support this argument.

           In *Hartford*, a used-car dealership allowed prospective buyers to take cars to be checked
15 by an outside mechanic or examined by a spouse.  A driver, El Karem Abdullah, was given
16 permission to test drive a vehicle by the used-car dealership.  Abdullah received such permission
17 at 4:30 p.m. and orally agreed to return the car by closing, at 6:00 p.m., after having it checked by
18 a mechanic.  Abdullah did not return at 6:00 p.m., the closing time, or any time thereafter.  Two
19 days later, Abdullah was involved in a fatal collision eight to ten miles from the used-car lot.
20 The trial court found that Abdullah was not a permissive user of the vehicle at the time of the
21 accident.

           On appeal, the *Hartford* court considered the "permissive user" coverage required by the
23 California Insurance Code and discussed three differing views of permission.  The Court
24 identified the views as: (1) the "initial permission" rule that if a person has permission to use an
25 automobile in the first instance, then any subsequent use while in the person's possession is
26 permissive; (2) the "minor deviation" rule that the person with permission is covered so long as
27 the deviation from the permissive use is minor in nature; and (3) the "conversion" rule that any
28 deviation from the "time, place or purpose" specified by the person granting permission takes the

permittee outside of coverage. *Hartford*, 94 Cal.App.3d at 89-90. However, the Court did not decide which of the three rules applied in California. Instead, the Court applied all three to the circumstances at issue to reach a determination that there was substantial evidence supporting the trial court's determination that Abdullah was operating the vehicle without permission and was not an insured driver under the car dealership's insurance policy.

In this case, both parties focus on the *Hartford* court's determination that the scope of permission granted to Abdullah had been limited "as to time, area and purpose." *Hartford*, 94 Cal.App.3d at 90. Williamsburg argues that E&B's use of Lawson's trailers for non-Lawson business exceeded the scope of permission given by Lawson. In contrast, US Fire attempts to distinguish *Hartford*, arguing that unlike Abdullah, E&B was given possession of the Lawson trailers to maintain at its lot with no instructions as to the scope of permitted use.

US Fire further contends that: (1) the relevant August 18, 2003 Subhaul Agreement does not state any terms or limitations regarding E&B's use of the Lawson trailers; (2) the agreement is completely silent as to E&B's near continuous possession of the Lawson trailers at E&B's yard; and (3) E&B was not specifically instructed, either verbally or in writing, to limit its use of the trailers to jobs for Lawson. To support its factual contentions, US Fire also relies on the deposition testimony of Bill Walker. Mr. Walker testified as follows:

> Q. And at any time before this accident, did anyone from Lawson tell you that you could only use the trailers when you were operating under the Subhaul Agreement in Exhibit 2?
>
> A. Never.
>
> ...
>
> Q. ...You obviously were using them at the time of the accident and you weren't under the Subhaul Agreement, and I'm wondering what gave you the idea that it was okay to do that.
>
> A. Boy, I don't know how to answer that. It never came up. You know, I mean, it -- it had been going on for years.
>
> ...

|   |    |    |
|---|----|----|
| 1 | Q. | ...When you dealt with Lawson, if we can go clear back to the beginning, up to the |
| 2 |    | time of the accident, did they ever lay down any type of rules for the use of their |
| 3 |    | trailers, apart from what might be in the Subhaul Agreement? |
| 4 | A. | No. |
| 5 | ... |    |
| 6 | Q. | Did you and [Mr. Lawson] ever discuss the subject of you using his trailers at the |
| 7 |    | time of the accident? |
| 8 | A. | Nope. |
| 9 | Q. | I mean, did he ever say anything to the effect that, "Hey, you didn't have my |
| 10 |    | permission to use these trailers"? |
| 11 | A. | No. |

Walker Depo. 39 :3-7; 39: 12-18; 40:18-23; 43:6-12.

US Fire further relies on *Burgess v. Cahill*, 26 Cal.2d 320, 324 (1945) to contend that an owner's failure to monitor or supervise the use of its vehicles while in the possession of another person constitutes a permissive use, even where the use is contrary to the expectations of the owner. In *Burgess*, the California Supreme Court considered an appeal from a directed verdict entered in favor of a defendant pickup truck owner. The defendant, H. P. Garin Co., was engaged in a farming enterprise and employed Samuel Cahill as a farm machinery mechanic. The company provided Cahill with a Ford pickup truck for his exclusive use while in its employ. Cahill garaged the pickup at his home and used it on many occasions for personal business. The company furnished Cahill with gas and oil, but made no effort to check the mileage or the amount of fuel consumed. Although some company cars had stickers prohibiting the use of the machines for private purposes, the pickup truck in Cahill's possession did not have such a sticker. One evening, Mrs. Cahill was driving the pickup truck on personal business with Cahill and his son in the truck. On this trip, a collision occurred between the pickup truck and another automobile. Two passengers in the other automobile were killed and others seriously injured.

The *Burgess* court considered the question of whether there was either express or implied permission for general use by Cahill. As the employer gave exclusive possession and permission

of the use of the vehicle to Cahill without restrictions upon its use, without effort to check the mileage or gas consumption and without effort to supervise or limit its use, the court concluded that the directed verdict in favor of the company was improper. *Burgess*, 26 Cal.2d at 324.

Williamsburg argues that *Burgess* and other cases cited by US Fire are distinguishable as they do not involve two for-profit businesses. Williamsburg contends that E&B had possession of Lawson's trailers solely because E&B agreed by written contract to transport freight for Lawson and E&B paid Lawson for the use of Lawson's trailers in performing work for Lawson.

As the issue of whether E&B had unrestricted use of the trailer is factually and legally disputed, it cannot be determined as a matter of law that E&B's and Lourenco's use of Lawson's trailer on the date of the accident was permissive use. Therefore, Williamsburg's Motion for Summary Judgment on US Fire's First Cause of Action is DENIED.

      B.      Second Cause of Action for Equitable Contribution

US Fire asserts that E&B and Lourenco were permissive users and Williamsburg had an equal duty to defend and indemnify E&B and Lourenco. Williamsburg argues that even if its policy provided coverage to E&B and Lourenco as permissive-user insureds, such coverage would have been excess to US Fire's coverage pursuant to California Insurance Code section 11580.9(h). In response, US Fire contends that section 11580.9 establishes that the Williamsburg policy is co-primary with the US Fire policy and not excess. US Fire also argues that Williamsburg waived its argument by failing to assert section 11580.9(h) as an affirmative defense and that Williamsburg has admitted a duty to defend E&B and Lourenco.

      *Waiver of Affirmative Defense-California Insurance Code section 11580.9*

In instances where two or more liability insurance policies cover the same accident, the California Legislature had adopted "conclusive presumptions" to resolve the question of which policy is primary or excess. *See* Cal. Ins. Code § 11580.8. These conclusive presumptions are delineated in section 11580.9 of the California Insurance Code.

US Fire contends that Williamsburg's argument regarding Insurance Code section 11580.9 is an affirmative defense that it failed to plead in its answer and therefore Williamsburg's argument is waived. Williamsburg counters that it was not required to plead the

specific reasons it did not have a duty to defend or indemnify E&B and Lourenco in the *Barron* action and that US Fire cannot demonstrate prejudice resulting from Williamsburg's failure to plead the conclusive presumptions of section 11580.9.

Federal Rule of Civil Procedure 8(c) provides in relevant part that, in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. Fed. R. Civ. P. 8(c)(1). Accordingly, Rule 8(c) requires parties to raise affirmative defenses in the pleadings. Notwithstanding this requirement, failure to plead an affirmative defense does not necessarily result in waiver. The Ninth Circuit has held that, in the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment. *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *Healy Tibbitts Const. Co. v. Insurance Co. of North America*, 679 F.2d 803, 804 (9th Cir. 1982) (holding that insurance company was permitted to raise its policy exclusions defense in a motion for summary judgment, whether or not it was specifically pleaded as an affirmative defense, where no prejudice resulted to plaintiff).

Here, Williamsburg first asserted that it was an excess insurer based on the conclusive presumptions of Insurance Code section 11580.9 in its motion for summary judgment. Assuming without deciding that Williamsburg was required to plead the presumptions in its answer, US Fire fails to establish any resulting prejudice. US Fire has had an opportunity to respond substantively to the defense. *See, e.g., Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (holding that unpleaded affirmative defense was properly considered where plaintiff had notice of the defense and an opportunity to respond). Further, while US Fire asserts that it was unable to conduct discovery regarding this issue, US Fire does not detail what specific additional discovery would be required to determine which of the conclusive presumptions applies in this matter except to assert that it could not take depositions of unidentified "percipient witnesses." Opposition, at p. 17 n.2. The Court notes that Williamsburg and US Fire stipulated to additional facts regarding the conclusive presumptions. *See* Statement of Stipulated Facts By United States Fire Insurance Company and Williamsburg National Insurance Company (Doc. 21-3). There has been no showing by US Fire of additional facts that need to be obtained through discovery or how any additional facts would defeat the conclusive presumptions asserted by Williamsburg.

US Fire also attempts to argue that Williamsburg waived the conclusive presumptions defense by admitting it had a duty to defend and indemnify in its discovery responses. To support this argument, US Fire directs the Court to an interrogatory propounded in this action and Williamsburg's response to that interrogatory. In the interrogatory response at issue, Williamsburg stated that it "had an obligation to defend E&B [including Lourenco] from the time of tender until the facts established that E&B did not qualify as an insured under its policy." (US Fire's Separate Statement of Additional Facts, Fact No. 4). US Fire asserts that this response is "wholly at odds with Williamsburg's new notion that ... [its] policy provides excess coverage to E&B and Lourenco." Opposition to Motion for Summary Judgment, at p. 16.

Williamsburg contends that it has not admitted it had a duty to defend E&B in the *Barron* action. Instead, Williamsburg maintains that it had no duty to defend because the facts established that E&B and Lourenco did not qualify as permissive-user insureds under its policy before any tender of defense. Williamsburg also argues that the conclusive presumptions of section 11580.9(h) would establish that Williamsburg had no duty to defend or indemnify E&B or Lourenco in the *Barron* action unless and until US Fire's policy was exhausted. The Court agrees. Assertion of the conclusive presumptions is not wholly inconsistent with Williamsburg's position throughout this matter. Even if E&B and Lourenco qualified as permissive users, it is well-established under California law that excess policies require exhaustion of underlying primary policies before a duty to defend or to pay proceeds arises. *See*, *e.g.*, *Community Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50 Cal.App.4th 329, 339 (1996) (no duty to defend by excess insurer until all primary insurance exhausted).

Based on the above, the Court finds that Williamsburg's failure to plead the conclusive presumptions of Insurance Code section 11580.9 in its answer does not preclude Williamsburg's motion for summary judgment based on those presumptions. It is further determined that Williamsburg has not admitted a duty to defend and indemnify.

///
///
///

*Application of Conclusive Presumptions of Insurance Code Section 11580.9*

Williamsburg contends that section 11580.9(h) applies and, assuming E&B and Lourenco were permissive users, subsection (h) mandates that the policy insuring the power unit (tractor) shall be primary for the loss and the policy insuring the attached trailer or trailers shall be excess.[2] To support its contention, Williamsburg directs the court to the decision in *Progressive Cas. Ins. Co. v. Peerless Ins. Co.*, 2007 U.S. Dist LEXIS 21445 (E.D.Cal. March 9, 2007). In *Progressive,* the court considered a dispute between insurers regarding coverage for an underlying fatality involving a tractor insured by Progressive and a trailer insured by Peerless. With support from section 11580.9(h), the court found that the policy insuring the trailer was excess. In reaching its decision, the *Progressive* court noted that in 2006 the Legislature added subsection (h) to section 11580.9, which provides:

> Notwithstanding subdivision (b), when two or more policies affording valid and collectible automobile liability insurance apply to a power unit and an attached trailer or trailers in an occurrence out of which a liability loss shall arise, and one policy affords coverage to a named insured in the business of a trucker, defined as any person or organization engaged in the business of transporting property by auto for hire, then the following shall be conclusively presumed: If at the time of loss, the power unit is being operated by any person in the business of a trucker, the insurance afforded by the policy to the person engaged in the business of a trucker shall be primary for both power unit and trailer or trailers, and the insurance afforded by the other policy shall be excess.

Cal.Ins.Code § 11580.9(h). The *Progressive* court acknowledged that section (h) clarified which of two policies pays for losses arising from a trucking accident where one insurance policy covers the power unit and a different policy covers the attached trailers. *Id*. at *16-17.

To distinguish *Progressive*, US Fire raises multiple contentions. First, US Fire asserts that Williamsburg failed to allege that E&B was in the business of a trucker. However, US Fire admits that both E&B and Lawson were truckers as defined by California Insurance Code section 11580.9(h). Response, at p. 14. The parties also stipulated to this fact. *See* Statement of

---

[2] Williamsburg also argued, for the first time in its Reply brief, that even if section 11580.9(h) does not apply, then section 11580.9(b) would apply before section 11580.9(d) would apply. (Reply, at pp. 11-13). However, this argument is disregarded in connection with Williamsburg's motion for summary judgment because new matters should not be raised in the Reply brief. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992); *United States v. Boyce*, 148 F.Supp.2d 1069, 1085 (S.D. Cal. 2001).

Stipulated Facts By United States Fire Insurance Company and Williamsburg National Insurance Company, at ¶¶ 2-3; Doc. 22-4.  Accordingly, this factual contention is not in dispute.

Second, US Fire reasons that *Progressive* and related decisions in that same matter (i.e., *Progressive Cas. Ins. Co. v. Peerless Ins. Co.*, 2007 U.S. Dist. LEXIS 44153 (E.D. Cal. 2007)) may not be cited to the Court pursuant to Local Rule 5-133(i), which requires certain citations of federal cases.  However, Local Rule 5-133(i) permits a party to cite unreported cases provided the party also submits a copy of that authority to the court.  Here, Williamsburg provided the Court with copies of the *Progressive* cases at issue.

Third, US Fire urges the Court not to apply subsection (h), but to apply subsection (d) of 11580.9, which provides:

> where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

Cal. Ins. Code § 11580.9(d).  US Fire relies on the decision in *Wilshire Ins. Co. v. Sentry Select Ins. Co.,* 124 Cal.App.4th 27 (2004), to demonstrate the applicability of subsection (d).  In *Wilshire*, the court considered a dispute between insurers related to a wrongful death action involving a tractor-trailer rig.  The court found the tractor-trailer rig to be a single motor vehicle and determined that the insurance policy covering the tractor (the Wilshire policy) and the insurance policy covering the trailer (the Sentry policy) applied to the "same motor vehicle" for purposes of section 11580.9, subsection (d).  *Id*. at 64.  The court reasoned that because the tractor was "scheduled as an owned vehicle" in the Wilshire policy and the trailer was "scheduled as an owned vehicle" in the Sentry policy, it was "conclusively presumed" under subsection (d) that each insurance policy was primary.  *Id*. at 65.

US Fire urges the Court to follow the reasoning in *Wilshire* and determine that the E&B power unit and the Lawson trailers were joined as a rig at the time of the accident and therefore both the US Fire and Williamsburg policies afford valid and collectible insurance to "the same

motor vehicle" under subsection (d). The Court declines to do so and instead finds that the *Progressive* decision and reasoning provides guidance for this Court.

As explained by the *Progressive* court, California courts were split on section 11580.9(d) interpretation and, to address the split, the California Legislature in 2006 added subsection (h) to section 11580.9. *Progressive*, 2007 U.S. Dist LEXIS 21445, at *16. In *Progressive*, the insurer of the trailer highlighted the legislative history, pointing to a Senate committee report that stated that the August 2006 amendments "'clarify which of two policies pays for losses arising from a trucking accident in which there is one insurance policy on the power unit and a [different] policy or policies on the trailer(s) involved in the accident'" and that "'the insurance policy covering the power unit pays first, and that the insurance policy and policies covering the trailer(s) pays second.'" *Id*. at *17 (citing Sen. Banking, Fin., and Ins. Comm., Analysis of Ass. Bill No.1909 (2005-2006 Reg. Sess.), as amended Aug. 7, 2006). The *Progressive* court also observed the legislative history, which noted that "'when a trucking accident occurs and there is one insurance policy covering the power unit it shall be considered primary, and the insurance policy or policies covering the trailer or trailers shall be excess.'" *Id*. at *18 (citing Ass. Floor Analysis, Analysis of Ass. Bill No.1909 (2005-2006 Reg. Sess.), as amended Aug. 7, 2006).

The *Progressive* court utilized subsection (h) as guidance and applied it to a fatal accident occurring prior to the subsection's effective date. Here, the Court also is faced with an accident occurring prior to the subsection's effective date. As the *Progressive* court indicated, however, "[a] subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act." *Calif. Emp. etc. Com. v. Payne*, 31 Cal.2d 210, 213-214 (1947).

Insofar as US Fire argues that subsection (h) demands that there be only <u>one</u> policy issued to a trucker and this case involves two truckers, the Court finds this argument without merit. US Fire's argument appears to add the qualifier of "only" to the language of subsection (h) and undercuts the legislative history identified above regarding primacy. Further, at the time of the accident, only E&B was "engaged in the business of a trucker."

Although the question of whether E&B and Lourenco were permissive-user insureds has not been resolved, the Court finds that if they are determined permissive-user insureds, the Williamsburg policy is excess. Accordingly, Williamsburg's Motion for Summary Judgment on US Fire's Second Cause of Action for Equitable Contribution is GRANTED and US Fire's Motion for Summary Adjudication on its Second Cause of Action for Equitable Contribution is DENIED.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court hereby ORDERS as follows:

1. US Fire's Motion for Summary Adjudication is DENIED;
2. Williamsburg's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated:   **November 19, 2008**          /s/ **Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE